**Robert Arthur BELL, Respondent,**

v.

**Barbara Ann BELL, Appellant.**

**Nos. WD 45553, WD 46039.**

Missouri Court of Appeals,
Western District.

Feb. 16, 1993.

Rehearing Denied March 30, 1993.

Laurie S. Ward, Sedalia, for appellant.

C. Michael Fitzgerald, Warrensburg, for respondent.

Before BERREY, P.J., and ULRICH and SMART, JJ.

SMART, Judge.

Barbara A. Bell appeals from an order denying her motion to set aside a default judgment which dissolved her marriage and decided issues of maintenance and property distribution.

Barbara A. ("Wife") and Robert A. ("Husband") Bell were married on November 11, 1967 in the state of Illinois. The parties resided in Wisconsin until January 1, 1991, at which time Mr. Bell separated from his wife and moved to Missouri. Two children were born during the marriage, one of whom is already emancipated.

On September 18, 1991, Wife filed for divorce in Wisconsin. Wife traveled to Missouri to pick up some personal belongings from Husband and also with the intention of delivering to the sheriff the summons to be served on Husband. In the meantime, on September 19, 1991, Husband filed for divorce in Missouri. Wife was then served with Husband's petition on September 20, 1991, when she arrived in Missouri. Husband was served with a summons in the Wisconsin action four days later, September 24, 1991.

Husband filed a motion to dismiss the Wisconsin.action on the basis that the Missouri action was pending. The Wisconsin court denied Husband's motion on October 16, 1991, after considering the parties' significant contacts with the state of Wisconsin. On October 30, 1991, a default judgment was entered in the Missouri action because Wife had not filed an answer to Husband's petition. The Missouri court ruled on the issues of maintenance, marital property, and the status of the marriage, but declined to enter any orders regarding the parties' unemancipated child. The decree specifically recognized that jurisdiction of custody matters was "properly vested" in the State of Wisconsin, where the unemancipated child resides.

On November 12, 1991, Wife filed a motion to set aside the default judgment under Rule 74.05 alleging in part that there was a previously filed petition for dissolution of marriage then pending in Wisconsin, that Husband had been denied dismissal of the Wisconsin action, that the Missouri action should be dismissed, and that good cause existed for Wife's failure to file a responsive pleading in the Missouri action.

On November 27, 1991, the motion to set aside was heard by the Missouri trial court. Evidence was presented by affidavit and through testimony of Laurie S. Ward, Wife's counsel, and Ms. Ward's secretary. The evidence revealed that subsequent to the hearing in Wisconsin overruling Husband's motion to dismiss, Wife's Wisconsin attorney wrote to Ms. Ward asking that Ms. Ward enter her appearance and attempt to obtain dismissal of the Missouri action if counsel for Mr. Bell would not voluntarily dismiss the action. At the time the letter arrived in Ms. Ward's office, she was on vacation. Her secretary held the letter on her desk intending to bring it to Ms. Ward's attention upon her return from vacation. In the meantime, the secretary talked by telephone with the Wisconsin attorney which resulted in a misunderstanding about who was responsible for attempting to get Mr. Bell's attorney to voluntarily dismiss the action. The secretary mistakenly understood the Wisconsin attorney would take care of it and then get back to Ms. Ward about any follow-up. Therefore, she waited and heard nothing further until she checked with the court on November 12, and found that a default judgment had been entered. She then notified Ms. Ward, and Ms. Ward promptly moved to set aside

the default. This action was taken 13 days after the default was entered.

During the hearing on the motion to set aside, Ms. Ward sought leave to file an amended motion to set aside the judgment so that she could more fully plead the factors of inconvenient forum, inequitable division of the property and lack of maintenance award. Both the motion to set aside and the motion for leave to amend were denied by the trial court. In the trial court's view, Wife's motion had alleged lack of jurisdiction as the only "meritorious defense" within the meaning of Rule 74.-05(c). Since the trial court concluded it had concurrent jurisdiction with Wisconsin, the court denied the motion to set aside the default judgment. The motion for leave to amend the motion to set aside was denied because the trial court found that the items should have been pleaded originally and presented in the initial hearing. Wife filed her appeal on December 2, 1991.

On January 15, 1992, Wife filed two additional motions in the trial court, one under Rule 74.06(b) and one as a second motion to set aside under Rule 74.05(c). At the hearing on these motions, evidence was again presented by Wife through affidavits of Wife and her Wisconsin attorney, and testimony from Ms. Ward's secretary, the payroll custodian for Husband's employer, and Husband. The evidence showed the significant disparity in income between the parties, the fact that Wife sacrificed occupational opportunities for the sake of the marriage, the inability of Wife to provide for her own needs, the disparity in the property award, the inadvertence in failing to file a responsive pleading, and the existence of the pending Wisconsin proceeding. The trial court denied Wife's motion indicating that the rules did not contemplate a second attack upon a judgment based on evidence which was previously heard and upon which relief was denied. Wife filed an appeal from this judgment on March 16, 1992. The appeals were consolidated for this court's consideration.

Wife argues on appeal that the trial court erred in denying Wife's initial motion to set aside the default judgment and

Wife's first amended motion to request relief under alternative grounds of 74.06(b) because Wife established good cause for the default and stated facts constituting a meritorious defense. This court will address the appeal of the denial of Wife's initial motion to set aside under Rule 74.05.

Wife argues that she established "good cause" by showing that she failed to answer the petition as a result of Ms. Ward's secretary's misunderstanding as to the handling of the motion to dismiss or stay the Missouri action, because this conduct was not "intentionally or recklessly designed to impede the judicial process," as specified in the rule. Additionally, Wife argues that she stated a basis for the court to decline to exercise jurisdiction over the Missouri dissolution action as a meritorious defense because the record established that there was a previously filed and pending dissolution action between the parties in a Wisconsin court that had expressly indicated its intent to exercise jurisdiction over the parties divorce, all of which respondent was aware.

### "Good Cause" Element

Rule 74.05(c) provides when a default judgment may be set aside, stating:

Upon motion stating facts constituting a meritorious defense and for good cause shown, an interlocutory order of default or a default judgment may be set aside. The motion shall be made within a reasonable time not to exceed one year after the entry of the default judgment. *Good cause includes a mistake or conduct that is not intentionally or recklessly designed to impede the judicial process.* (emphasis added).

The trial court has the discretion to set aside a default judgment and the trial court's decision in that regard will generally not be interfered with unless an abuse of discretion is found. *Gibson v. Elley,* 778 S.W.2d 851, 853 (Mo.App.1989).

It is notable, however, that "the discretion not to set aside is a good deal narrower than the discretion to set aside." Thus, an appellate court is much more likely to interfere with the trial court's

decision when the motion to set aside the judgment has been denied. The reason given for such a directive is the distaste our system holds for default judgments.

*Id.* at 853–54 (citations omitted). This discretion is even more restrictive in divorce actions. *Ramage v. Ramage,* 792 S.W.2d 432, 433 (Mo.App.1990). The court in *Mosley v. Mosley* discussed this disfavor for default judgments in divorce proceedings by stating, "[i]n a divorce case, there is practically no such thing as a divorce decree by confession and courts disfavor 'default judgments' in dissolution of marriage cases because of the state's interest in the welfare of the parties." 744 S.W.2d 874, 878 (Mo.App.1988).

The first issue to be resolved is whether Wife made a showing of good cause for her failure to answer Husband's petition. The second issue is whether she articulated a meritorious defense. We believe the record shows that Wife made a showing of "good cause," as that phrase is described by Rule 74.05(c). Wife turned the summons over to her attorney in Wisconsin. It was not unreasonable for her to work through that attorney. The mistake by Ms. Ward's secretary could not be considered reckless since the secretary was not consciously disregarding a known risk. *See Gibson,* 778 S.W.2d at 854–855. In this case the secretary (incorrectly) understood that Ms. Ward would not have to do anything until she heard further from the Wisconsin attorney.

The case relied upon in this case by Husband, *Robson v. Willers,* 784 S.W.2d 893, 896 (Mo.App.1990), is distinguishable because this court in that case relied upon case law decided prior to the adoption of new Rule 74.05, which defines "good cause" and greatly broadens the meaning of that phrase. *Gibson,* 778 S.W.2d at 855. In any event, the conduct of the appellants in *Robson,* which amounted to a conscious choice to ignore the summons, could accurately be called recklessness. *See also Boatmen's First National Bank v. Krider,* 844 S.W.2d 10, 12 (W.D.Mo.App.1992) (where the defendant had a "careless attitude" toward the summons).

In close cases, deference must be given to the determination of the trial judge as to whether conduct in a particular case is excusable as not being reckless or intentional. In this case, the trial court decided on other grounds not to set aside the default. The court did not indicate a finding that the conduct of movant failed to amount to "good cause," so our finding of "good cause" does not overturn an express finding of the trial court on that issue.

Here, it is not difficult to understand the confusion as to the responsibility for the follow-up on the summons. A telephone call to the Missouri attorney for Husband would have revealed whether Husband intended to continue with plans to seek a dissolution in Missouri, in spite of the decision of the Wisconsin court not to defer to Missouri. It was the confusion about who would make that call that created the problem, and the call was never made. As soon as the mistake was discovered, Ms. Ward promptly moved to set aside the judgment, all within 15 days of the entry of judgment. It makes sense that the sooner the mistake is discovered, and acted upon, the more receptive the courts should be to a motion to set aside. Prompt action to set aside a judgment is less threatening to the stability of the final judgment rule than action taken substantially later. Liberality should especially be applied when prompt action is taken in domestic cases. *Ramage,* 792 S.W.2d at 433. We hold that in this case "good cause" was shown for Wife's failure to respond to the summons and petition.

### *"Meritorious Defense" Element*

Rule 74.05(c) also requires Wife to show that she had a meritorious defense. The proffered defense does not have to be conclusively proven, but must simply show the existence of an arguable theory of defense. *Gibson,* 778 S.W.2d at 855. We hold that "defense" in 74.05(c) is not used in a restrictive sense, but means any factor which is likely to have a material effect on the substantive result of the case. There is every reason to believe that the word "de-

fense" was used in the rule in a broad sense rather than in a narrow sense. It would be inconsistent with the notion of our distaste for default judgments to take an overly restrictive approach to the meaning of the word "defense."

The Bells were married in Wisconsin. They lived in the State of Wisconsin for virtually their entire twenty-four year marriage. They raised their children (one of whom is yet unemancipated) in Wisconsin. They made their livelihood in Wisconsin, and they acquired their marital property in Wisconsin. Husband left Wisconsin and moved to Missouri in 1991. Within the same year that he left the marital home, he filed for divorce in Missouri, while Ms. Bell filed for divorce in the State of Wisconsin. The Wisconsin trial court denied Husband's motion to dismiss, finding that Wisconsin was the most appropriate forum to hear the divorce action because of the significant contacts the parties have with Wisconsin.

Although Wife's attorney was not technically accurate when she stated the defense was "lack of jurisdiction," what Wife really intended to argue was that the Missouri Court should voluntarily decline to exercise jurisdiction in view of the pending Wisconsin proceeding, because Wisconsin has a greater interest in the lives of the parties, and is the location of the unemancipated child of the marriage. The jurisdictional issue was a reasonable and appropriate issue for Wife to argue, even though it was technically incorrect to argue that the court lacked jurisdiction as a matter of law. All of these factors, when properly considered, could have defeated Husband's right to maintain this action. Thus, Wife asserted a "meritorious defense."

▮▮▮ Once the trial court indicated at the initial hearing that he felt the designation of the "meritorious defense" was not technically accurate, Wife's attorney sought leave to amend to more fully and specifically establish good reason for the

court to stay this proceeding or decline jurisdiction. Wife wished to present evidence of substantial income disparity between wife and husband, and the fact that wife had sacrificed career opportunities for the sake of the marriage in accordance with the desires of her husband.[1] These matters would have been proper matters for the consideration of the trial court with regard to property division and maintenance. Thus, Wife made a further showing of additional "meritorious defenses" within the meaning of Rule 74.05(c).

▮▮▮ While the trial court was not incorrect in asserting that these matters should have been originally pleaded and presented, we find the substantial risk of injustice here to have mandated some accommodation. Leave to amend should have been allowed in the interest of justice. Also, the judgment should have been set aside as to the property division and maintenance issues. Rule 74.05 was specifically amended in 1987 to express a spirit which is forgiving of common mistakes and inadvertence as in this case. *McClelland v. Progressive Casualty Ins. Co.,* 790 S.W.2d 490, 493 (Mo.App.1990). The concept of "meritorious defense" likewise is not intended to impose a high hurdle; it is designed to allow a matter to be resolved on its merits where there are meritorious matters to be considered. In light of these facts, and in consideration of the law's disfavor of default judgments, especially in dissolution actions, this court holds that the trial court abused its discretion in denying Wife's motion to set the default judgment aside.

Since the default judgment should have been set aside, this court has the power to reverse the judgment of the trial court in its entirety. Such action would restore the status of the parties in every respect to that which existed prior to the judgment. We gather, however, that Wife does not seek to nullify the dissolution. Indeed, the thrust of wife's efforts to attack the judg-

---

1. We are able to take note of the details of what Wife wished to present, since this evidence was presented in connection with Wife's second motion to set aside judgment. The evidence showed that Wife's employment pays her approximately $1,404.00 per month ($6.75 per hour) and Husband's employment pays him $3,000.00 per month ($17.30 per hour).

ment have been directed at the property division and the lack of maintenance. Therefore, the judgment of dissolution entered October 30, 1991, is vacated as to the elements of property division and maintenance. The decree is undisturbed as to the dissolution of the marriage. The case is remanded to the trial court. As to matters of property division and maintenance, the trial court on remand is directed to enter a stay pending resolution of the Wisconsin action, or to dismiss any claims related to property division and maintenance, whichever is most appropriate in view of the status of the proceeding in Wisconsin.[2] The appeal of Mrs. Bell in case No. WD 46039, which was consolidated with her earlier appeal, is dismissed as moot in view of the foregoing.

All concur.

David C. Hemingway, Office of the Public Defender, St. Louis, for movant/appellant.

William L. Webster, Atty. Gen., Michael J. Runzi, Asst. Atty. Gen., Jefferson City, for respondent/respondent.

---

2. Although the trial court was aware of the facts related to jurisdiction in Wisconsin, and decided that Missouri should not defer to the State of Wisconsin in the exercise of jurisdiction, except as to child custody (which is mandated by § 452.450, RSMo 1986), we find the evidence on this issue to be sufficiently compelling to justify concluding that issue in favor of deferring to the State of Wisconsin. There was some evidence that Wife had considered trying to move to Missouri also, but that she had given up that idea. Most of the factors point strongly to the wisdom of deferring to the State of Wisconsin.